# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| KARYN TRIPMACHER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Case No. 16-0092 (RJL) |
| | ) |
| STARWOOD HOTELS & RESORTS WORLDWIDE, INC., | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION
(September **29**, 2017) [Dkt. #17]

Plaintiff tripped and fell at her nephew's wedding reception, seriously injuring herself. She filed a personal injury lawsuit in the Superior Court of the District of Columbia, alleging that the owner and operator of the reception venue was liable for negligently failing to keep the premises in reasonably safe condition. Defendant removed the action to this Court. In managing this case, I set deadlines for, *inter alia*, the timely designation of expert witnesses. Plaintiff missed her deadline once, then after having been granted a second chance, missed it again. Presently before the Court is defendant's Motion for Summary Judgment [Dkt. #17]. Defendant argues that plaintiff's failure to timely designate an expert is dispositive because D.C. tort-law requires expert testimony to establish the standard of care applicable to this case. Upon consideration of the pleadings, relevant law, and the entire record herein, the Court will GRANT the Motion and enter judgment for defendant.

## BACKGROUND

The happy couple married in August 2015. To mark the joyous occasion, they invited their family and friends to celebrate at the St. Regis Hotel in Washington, D.C. Def.'s Statement Mat. Facts ¶¶ 1–2 ("Def.'s SMF") [Dkt. #17-1]; Pl.'s Statement Mat. Facts ¶¶ 1–2 ("Pl.'s SMF") [Dkt. #19]. Among the many guests was plaintiff Karyn Tripmacher, a retired special-education teacher and the aunt of the groom. Def.'s SMF ¶ 3; Pl.'s SMF ¶ 3. Unfortunately, not all went well for Tripmacher that evening. At approximately 11:00 p.m. she decided to leave the Astor Ballroom. As she did, she tripped—and fell. Def.'s SMF ¶ 4; Pl.'s SMF ¶ 4. According to her deposition, Tripmacher sustained serious injuries as a result of her fall, including fractures to her finger, ribs, and vertebrae, as well as other injuries requiring an emergency hip replacement. *See* Pl.'s Opp'n to Def.'s Mot. Summ. J. ("Opp'n") [Dkt. #19], Ex. 1, Tr. of Karyn Tripmacher Dep. 43:13–44:5, 51:11–19 ("Tripmacher Dep.") [Dkt. #19-1].

Not surprisingly, the precise details are in dispute. None of the wedding guests or hotel staff witnessed Tripmacher's fall. Def.'s SMF ¶¶ 7–9; Pl.'s SMF ¶¶ 7–9. Tripmacher believes that she tripped over a temporary wheelchair ramp connecting the Astor Ballroom to the Astor Terrace. Compl. ¶ 5 [Dkt. #1-2]. The ramp in question was about five feet wide and about twenty-six inches long. Opp'n, Ex. 4, Tr. of Oliver A. Beckford Dep. 15:14–18 ("Beckford Dep.") [Dkt. #19-1]. The carpenter who built the ramp estimated that it was four or five inches tall at its highest point and that its twenty-six inch length

gave the ramp an incline of thirty to forty degrees. *Id.* at 15:19–16:1, 22:19–21.¹ The ramp was covered in red carpet similar to that covering the ballroom floor. *Id.* at 20:5–21. Although the ramp did not have handrails, its edges were marked with yellow tape about one or two inches wide. Opp'n, Ex. 2, Decl. of John Mircovich ("Mircovich Decl.") ¶¶ 10–11 [Dkt. #19-1]. Photographs in the record show that the ramp was positioned in front of a set of double doors in a manner that would enable a wheelchair to clear the single stair between the Astor Ballroom and the Astor Terrace. *See* Def.'s Mot. Summ. J., Ex. 1 [Dkt. #17-4]; Mircovich Decl., Ex. 1 [Dkt. #19-1, at 18]. Although Tripmacher concedes that she did not see the ramp when she tripped, Pl.'s SMF ¶ 6, according to her deposition she "know[s] for a fact that it was the ramp" that she tripped over because she "can't imagine [there] was anything else on the floor." Tripmacher Dep. 39:2–40:12; *see also* Mircovich Decl. ¶ 15 ("I observed nothing except the ramp that could have caused my aunt to trip or slip and fall.").

Tripmacher also testified that the Astor Ballroom was "very crowded" the night of the wedding reception and that the tables in the ballroom "were so close together" that movement between them was difficult. Tripmacher Dep. 81:9–16. In addition, she stated that the ballroom was dimly lit. *Id.* at 31:6–17. John Mircovich, another guest at the wedding and the husband of Tripmacher's niece, submitted a sworn affidavit also attesting that "[t]he ballroom was dimly lit." Mircovich Decl. ¶ 13. The director of banqueting at

---

¹ Although the deponent estimated the incline of the ramp at thirty to forty degrees (and the parties recite that number), the Court observes that a five-inch rise over a twenty-six-inch run entails an angle of approximately eleven degrees—given that, as the deponent testified, the slope of the ramp was "one solid angle." Beckford Dep. 25:8–15. Go figure !

3

the St. Regis Hotel, Hamid Azimi, testified that the lights in the Astor Ballroom were dimmed to approximately fifty percent of their full brightness during the reception. Def.'s Reply Supp. Summ. J. [Dkt. #20], Ex. 4, Tr. of Hamid Azimi Dep. 43:18–47:7 ("Azimi Dep.") [Dkt. #20-4]. Tripmacher stated, when shown a reference photo, that she believes the lights were set "darker" than fifty percent. Tripmacher Dep. 86:8–18.

On December 22, 2015, Tripmacher filed suit in the Superior Court of the District of Columbia, alleging that Starwood Hotels & Resorts Worldwide, Inc. ("Starwood" or "defendant"), the owner and operator of the St. Regis Hotel, negligently breached its "duty to exercise reasonable care under the circumstances to keep the premises reasonably safe for persons lawfully upon the property," Compl. ¶ 9, and that, as a result of this breach, Tripmacher experienced injuries entitling her to $2 million in damages, plus costs and interests, *id.* ¶ 11. Invoking this Court's diversity jurisdiction, Starwood promptly removed the action here. *See* 28 U.S.C. §§ 1332, 1441; Def.'s Pet. Removal ¶¶ 5–6 [Dkt. #1-1].

On March 7, 2016, upon joint motion of the parties, I entered a scheduling order setting, *inter alia*, deadlines for expert designations. Pursuant to the initial schedule, Tripmacher's expert designations were due by June 1, 2016, and Starwood's by July 1, 2016. Tripmacher's deadline came and went without an expert designation. Then, on June 23, the parties jointly requested that I modify the scheduling order such that plaintiff's expert designations would be due August 1, 2016, and defendant's by September 1, 2016. Joint Mot. Extend Scheduling Order 2 [Dkt. #11]. I granted the motion a few days later. Unfortunately for Tripmacher, she failed to take advantage of this second chance; August 1 came and went with no further activity on the docket. On September 1, Starwood

designated an orthopedic surgeon as its expert witness. *See* Def.'s Rule 26(a)(2) Expert Designation [Dkt. #12]. One week later, Tripmacher moved for leave to late-file an expert designation, explaining that "due to an internal scheduling error, the deadline to name expert witnesses of August 1, 2016, did not make it onto the actual calendar for the [p]laintiff," and that she had not discovered the error until August 29. Pl.'s Mot. Leave to Late-File Rule 26(a)(2) Expert Designation & Report ¶ 5 ("Pl.'s Mot. to Late-File") [Dkt. #13]. Plaintiff did not explain why it took an additional ten days after the discovery of her error to seek leave to late-file. In any event, Starwood timely opposed the motion, and on October 11, 2016, I denied Tripmacher's request for leave to late-file.

Starwood filed the instant motion for summary judgment in December 2016. Briefing on the Motion was completed in January 2017, and I took the Motion under advisement shortly thereafter.

## STANDARD OF REVIEW

Summary judgment is appropriate when the pleadings and the record demonstrate that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is material if it 'might affect the outcome of the suit under the governing law,' and a dispute about a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Steele v. Schafer*, 535 F.3d 689, 692 (D.C. Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). To defeat summary judgment, the

nonmoving party must "designate specific facts showing there is a genuine issue for trial." *Id.* at 324 (quotation marks omitted). In determining whether there is a genuine dispute about material facts, the court "must view the evidence 'in the light most favorable to the nonmoving party and . . . draw all reasonable inferences in favor of the nonmoving party.'" *Grosdidier v. Broad. Bd. of Governors, Chairman*, 709 F.3d 19, 23–24 (D.C. Cir. 2013) (quoting *Talavera v. Shah*, 638 F.3d 303, 308 (D.C. Cir. 2011) (alteration in original). Moreover, if the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," summary judgment may be granted. *Celotex*, 477 U.S. at 322.

## ANALYSIS

Tripmacher pursues a negligence claim against Starwood. In the District of Columbia, "[t]he elements of a cause of action for negligence are a duty of care owed by the defendant to the plaintiff, a breach of that duty by the defendant, and damage to the interests of the plaintiff, proximately caused by the breach." *Woods v. District of Columbia*, 63 A.3d 551, 553 (D.C. 2013) (quoting *Taylor v. District of Columbia*, 776 A.2d 1208, 1214 (D.C. 2001)).[2] "[T]he applicable standard for determining whether an owner or occupier of land has exercised the proper level of care to a person lawfully upon his

---

2   My jurisdiction stems from the diversity of the parties. *See* Def.'s Pet. Removal ¶¶ 5–6; 28 U.S.C. §§ 1332, 1441. A federal court sitting in diversity must apply the substantive law of the jurisdiction in which it sits. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938). My duty, then, "is to achieve the same outcome [that] would result if the District of Columbia Court of Appeals considered this case." *Metz v. BAE Sys. Tech. Sols. & Servs. Inc.*, 774 F.3d 18, 21 (D.C. Cir. 2014). To fulfill this obligation, I look for guidance to the published opinions of the D.C. Court of Appeals. *See id.*

premises is reasonable care under all of the circumstances." *Night & Day Mgmt., LLC v. Butler*, 101 A.3d 1033, 1038 (D.C. 2014) (quoting *D.C. Hous. Auth. v. Pinkney*, 970 A.2d 854, 866 (D.C. 2009)). D.C. courts often require expert testimony to prove the standard of care. *See Varner v. District of Columbia*, 891 A.2d 260, 267–68 (D.C. 2006) (collecting cases). Where the subject of the alleged breach is "so distinctly related to some science, profession, or occupation as to be beyond the ken of the average lay juror," the plaintiff must produce expert testimony. *Night & Day Mgmt.*, 101 A.3d at 1039 (quoting *Varner*, 891 A.2d at 265). However, if the alleged negligence occurred in a context "within the realm of common knowledge and everyday experience, the plaintiff is not required to adduce expert testimony." *Id.* at 1038–39 (quoting *Tolu v. Ayodeji*, 945 A.2d 596, 601 (D.C. 2008)).

Starwood contends Tripmacher cannot carry her burden in this case because she failed to designate an expert witness capable of establishing the applicable standard of care and who can opine as to whether that standard was breached when the St. Regis Hotel placed the temporary wheelchair ramp in the Astor Ballroom. Mem. Supp. Def.'s Mot. Summ. J. 5–9 [Dkt. #17-2]. Tripmacher responds that no expert is required because a lay jury is capable of assessing the "relative dangerousness" of the ramp based upon their own experience. Opp'n 7; *see also id.* at 13 ("Starwood's negligence consists of creating a tripping hazard and failing to prevent invitees from falling over it. This is not too convoluted or recondite for a lay jury to understand."). She identifies several problems that she believes to be within the ken of the average lay juror. These include the specifications of the wheelchair ramp itself, including its color, size, and lack of handrails,

7

as well as the number of people and the level of illumination in the Astor Ballroom. *See id.* at 7. In addition, Tripmacher argues that as a general matter, expert testimony is not required where a "plaintiff is injured after losing [her] footing and falling." *Id.* at 10.

"At first blush, there is arguably some common sense appeal to [Tripmacher's] suggestion that the average juror does not require advice from experts" in order to recognize a potential tripping hazard based upon the types of considerations she identifies. *Varner*, 891 A.2d at 266. "But such a judgment based on bare intuition of this sort would be misguided." *Briggs v. Wash. Metro. Area Transit Auth.*, 481 F.3d 839, 845 (D.C. Cir. 2007). "The D.C. Court of Appeals has required expert testimony in a number of cases that, on first blush, appear to be within the realm of common knowledge." *Id.* (collecting cases); *see also Godfrey v. Iverson*, 559 F.3d 569, 572 (D.C. Cir. 2009) ("Recently . . . the D.C. Court of Appeals has required expert testimony in a wider variety of cases, even in those that might initially seem to fall within jurors' common knowledge." (citation omitted)). It has also repeatedly "affirmed trial court rulings that expert testimony is required to establish the standard of care in negligence cases" involving, *inter alia*, "issues of safety." *Varner*, 891 A.2d at 267 (collecting cases); *accord Night & Day Mgmt.*, 101 A.3d at 1039. Indeed, "the case law indicates that the 'common knowledge' exception to the expert testimony requirement is recognized only in cases in which everyday experience makes it clear that jurors could not reasonably disagree over the care required." *Briggs*, 481 F.3d at 845. When negligence cases implicate safety issues and the D.C. Court of Appeals holds expert testimony unnecessary, "the cases tend to arise from facts showing

an obvious hazard." *Wise v. United States*, 145 F. Supp. 3d 53, 61 (D.D.C. 2015) (collecting cases). This is not such a case.

To begin with, the D.C. Court of Appeals has held that proving the standard of care applicable to managing large numbers of people in venues open to the public requires expert testimony. In *Hill v. Metropolitan African Methodist Episcopal Church*, 779 A.2d 906, 908–10 (D.C. 2001), for example, a woman was injured when she was caught in a rush of people on a congested stairway in a newly inaugurated church building. The D.C. Court of Appeals held that although the process of entering and exiting large events was within the common knowledge and experience of the average lay juror, "that is a far cry from any experience with the process of planning for the handling of large crowds in such circumstances, both architecturally and through various crowd control measures." *Id.* at 910. "Without the expert testimony of one familiar with such considerations," the court reasoned, "the jury would be left to sheer speculation as to various types of crowd control, what level of measures is generally accepted as reasonable in such circumstances, and the relation of such measures to possible mishaps in the exiting process." *Id.*

The same logic applies here. Tripmacher argues that lay jurors can assess the degree of potential danger posed by a temporary wheelchair ramp surrounded by tables in a crowded ballroom. Opp'n 7. Although many potential jurors are likely familiar with crowded conditions at wedding receptions, the average layperson has no experience with designing appropriate measures to handle a large number of people, nor with the placement of accessibility features in spaces that are open to the public. Without expert testimony, then, the jury would be left with nothing but "sheer speculation" as to whether the location

of the temporary wheelchair ramp posed any danger due to the number of people in the Astor Ballroom during the wedding reception.

Equally plain is the necessity of expert testimony for the jury to evaluate whether the ramp posed a hazard because the lights in the ballroom were dimmed. *See id.* Our Circuit has recognized circumstances where D.C. tort-law requires expert testimony to prove the standard for "adequate" illumination. *See Briggs*, 481 F.3d at 846 (holding expert testimony required to prove standard for lighting temporary construction walkway in Metrorail station). Here, the director of banqueting at the St. Regis Hotel, Hamid Azimi, testified that the lights in the Astor Ballroom were dimmed to approximately fifty percent of their full power. Tripmacher believes they were set lower than fifty percent, and proffers the lay opinion testimony of herself and another wedding guest to suggest that this setting was too low. Whatever the precise lumen level in the Astor Ballroom that night, it is clear that no reasonable juror could rely on the lay opinion testimony of Tripmacher and another guest to establish the standard for adequate ballroom lighting. "While lay persons can certainly distinguish between illumination and complete darkness, there is nothing to indicate that common knowledge includes a universal standard of 'adequate' lighting within a [hotel ballroom]." *Id.*; *see also Capitol Sprinkler Inspection, Inc. v. Guest Servs., Inc.*, 630 F.3d 217, 225 (D.C. Cir. 2011) (relying on *Briggs* to hold expert testimony required to establish standard for "ready accessibility" of drum drips). As such, expert testimony is required.

I reach a similar conclusion in regard to Tripmacher's contention that lay jurors are equipped to determine whether the specifications of the temporary wheelchair ramp

10

rendered it unreasonably dangerous. Tripmacher believes the ramp was difficult to see (and therefore posed a tripping hazard) because it lacked handrails, was relatively small, and was covered in carpet nearly the same color as the ballroom floor. *See* Opp'n 7–8. She also believes, apparently, that the yellow tape on the edges of the ramp failed to provide adequate visual contrast. Upon review of the District's case law, including the cases cited by plaintiff, I conclude that the features of the ramp identified by Tripmacher do not create the kind of obvious hazard the D.C. Court of Appeals has held sufficient to ameliorate the need for expert testimony in cases involving premises safety. *Cf. Destefano v. Children's Nat'l Med. Ctr.*, 121 A.3d 59, 75 (D.C. 2015) (involving "a large, uncovered vent in the wall of a parking garage" through which a child could fall); *Bostic v. Henkels & McCoy, Inc.*, 748 A.2d 421, 425–26 (D.C. 2000) (involving "a gap of six to seven inches between boards" covering a large trench into which a pedestrian could fall).[3] Moreover, the flaws Tripmacher identifies are all "distinctly related" to the design and construction of the ramp, and thus to the engineering or construction professions. *Night & Day Mgmt.*, 101 A.3d at 1039; *see also Wise*, 145 F. Supp. 3d 53 at 62–64 (holding expert testimony required to prove standard of care for handrail installation and inspection). I therefore conclude that expert testimony is required to establish the standard of care applicable to the issues plaintiff identifies.

---

[3] In addition to these cases, Tripmacher also cites *Trust v. Washington Sheraton Corp.*, 252 A.2d 21, 22 (D.C. 1969), which held that no expert testimony was required where a plaintiff lost her footing descending a step outside of a hotel bathroom. That case, nearly a half-century old, does not appear to reflect the modern position of the D.C. Court of Appeals. *See Godfrey*, 559 F.3d at 572 ("Recently . . . the D.C. Court of Appeals has required expert testimony in a wider variety of cases, even in those that might initially seem to fall within jurors' common knowledge." (citation omitted)). In any event, the average lay juror is likely to have less experience traversing temporary wheelchair ramps than descending steps.

Finally, I am not persuaded by Tripmachers' categorical argument that "expert testimony is not needed to prove a national standard of care, such as a building code, that requires particular markings, a particular level of lighting, or a particular type of handrails or guardrails," or to prove a "deviation from the standard of care," in any case where a "plaintiff is injured after losing [her] footing and falling." Opp'n 10. To the contrary, the D.C. Court of Appeals has repeatedly found expert testimony necessary on the facts of particular cases involving a loss of footing. *See, e.g.*, *Wilson v. Wash. Metro. Area Transit Auth.*, 912 A.2d 1186, 1191 (D.C. 2006) (affirming judgment granted for defendant notwithstanding the verdict where plaintiff "presented no expert testimony, or any testimony for that matter, with respect to the presence of the orange sticky substance on the steps" (emphasis omitted)); *Twyman v. Johnson*, 655 A.2d 850, 853 (D.C. 1995) (affirming directed verdict for defendant where expert's testimony "had no foundation" and plaintiff "was the only witness" to her slip). Indeed, Tripmacher herself acknowledged at an earlier stage of this litigation that expert testimony was "crucial to [her] case at trial" and that "[t]he exclusion of such testimony would be incurably prejudicial." Pl.'s Mot. to Late-File ¶ 11. Unfortunately for plaintiff, her prior assessment has proved all too true; under D.C. law she cannot establish the standard of care without expert testimony.

In sum then, because Tripmacher concedes that she designated no expert, and because her theory of negligence involves issues related to crowding, lighting, and the specifications to which the temporary wheelchair ramp was designed and constructed, I will grant summary judgment for Starwood. *See Burke v. Air Serv Int'l, Inc.*, 685 F.3d

1102, 1105 (D.C. Cir. 2012) (affirming entry of summary judgment where plaintiff failed to designate expert required under D.C. tort-law); *Hill*, 779 A.2d at 910 (same).[4]

## CONCLUSION

For all of the forgoing reasons, the Court GRANTS defendant's Motion for Summary Judgment. An Order accompanies this Memorandum Opinion.

*[signature]*
RICHARD J. LEON
United States District Judge

---

[4] In light of this conclusion, I do not reach Starwood's argument that there is insufficient evidence for a reasonable jury to conclude that Tripmacher in fact tripped over the temporary wheelchair ramp.